IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TIM OLIN SANDERS,            )
                             )
    Plaintiff,                )
                             )
    v.                       )   CIVIL ACTION NO. 2:16cv768-CSC
                             )            (WO)
NANCY A. BERRYHILL,          )
Acting Commissioner of Social Security,[1] )
                             )
    Defendant.               )

**MEMORANDUM OPINION**

**I. Introduction**

Plaintiff Tim Olin Sanders ("Sanders") protectively filed a Title II application for a period of disability and disability benefits and a Title XVI application for supplemental security income, alleging that he became disabled on December 1, 2012. (R. 55, 214-15, 216-17). His applications were denied at the initial administrative level. The plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Michael D. Anderson. Following a hearing held on February 18, 2015, (R. 74-96), the ALJ issued a decision denying the claims on May 29, 2015. (R. 52-68). The Appeals Council denied Sanders' subsequent request for review (R. 6-9). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester*

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. (Docs. ## 9 & 10). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination[3] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or former occupation?
> (5) Is the claimant unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Sanders was forty-six years old on the date of the administrative hearing and one day shy of being forty-seven years old on the date the ALJ issued his opinion. (R. 77). Sanders has completed the eighth grade. (*Id.*). His prior work experience includes work as a machine operator processor and a repair shop technician small engine mechanic. (R. 66). Following the administrative hearing, the ALJ concluded that Sanders

3

has severe impairments of

> degenerative disc disease of the lumbar spine, morbid obesity, chronic obstructive pulmonary disease with tobacco abuse, venous insufficiency (legs), and a mood disorder/depression (20 CFR 404.1520(c) and 416.920(e)). Additionally, [Sanders] has a non-severe impairment of hypertension.

(R. 57).

The ALJ further concluded that Sanders' impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 58-59). The ALJ found that Sanders was unable to perform his past relevant work but concluded that

> [a]fter careful consideration of the entire record, and taking the claimant's morbid obesity into consideration, . . . this 46-year old claimant with 8 years of education has the residual functional capacity to perform Light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following exceptions and considerations: he can sit for one to two hours without interruption and for a total of six hours in an eight-hour day; he can stand and walk for 30 minutes to one hour without interruption and for a total of four to six hours in an eight-hour day; he can lift, carry, push, and pull ten pounds frequently and 20 pounds occasionally; frequently perform simple grasping and fine manipulations; occasionally use his feet for repetitive movements such as operating foot controls; he can occasionally bend, stoop, crawl, climb, crouch, kneel, use stairs, and balance; he can never climb ladders, ropes, or scaffolding, never be exposed to moving and hazardous machinery or drive commercial motorized vehicles; and he is restricted from the concentrated or excessive exposure to pulmonary irritants. The claimant can understand, remember and carry out simple instructions, and he can attend to simple tasks for two hours at a time over an 8 hour day; he will need casual supervision, and he will work best in a well-spaced work station; contact with the general public should be casual, criticism should be given in a non-confrontational manner; he will work best with a few co-workers and changes in the work setting need to be gradual and infrequent. The claimant is assessed with mild to moderate pain, which does not take him off task or cause conditions that do not prevent the satisfactory completion of work. However, in consideration

4

of his pain issues, and his mental issues, as regards his concentration, persistence and pace, I find that he is limited to simple, unskilled, repetitive, and routine work, in jobs that have no responsible or any regular general public contact, any that occurs must be brief and superficial, in jobs where he works primarily alone, and in jobs that require little independent judgment, with only routine changes, no multiple or rapid changes.

(R. 60).

Using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, the ALJ concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 66-67). Accordingly, the ALJ concluded that the plaintiff was not disabled. (R. 55, 67).

**B. Plaintiff's Claims.** As stated by Sanders, he presents two issues for the court's review:

I. The ALJ erred in failing to specify the weight assigned to a treating physician's opinion, and failing to provide sufficient reasoning for his apparent rejection of the opinion.

II. The ALJ erred in assigning no weight to portions of the opinion of a consultative examiner, and providing insufficient or no reasoning for rejecting portions of the opinion.

(Doc. # 11, Pl's Br. at 1, 3, 5).

## IV. Discussion

**A.    Introduction**

This court's ultimate inquiry is whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). "Social Security proceedings are inquisitorial rather than

adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

An ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

**B. Substantial Evidence Supports the ALJ's Decision to Reject the Treating Physician's Opinion**.

Sanders argues that the ALJ erred in rejecting the opinion of Dr. Richard Cyrus who opined on a "Request for Medical Information" form for food stamps, that Sanders was permanently unable to work. (R. 428). Sanders complains that the ALJ did not "indicate what, if any weight he gave to the opinion of Dr. Cyrus." (Doc. # 11 at 3).

The medical opinion of a treating physician is entitled to substantial or controlling

weight unless the ALJ articulates good cause for rejecting that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).

However, a treating physician's opinions on legal issues that are reserved to the Commissioner are not considered medical opinions and are not entitled to any special weight. 20 C.F.R. §§ 404.1527(d), 416.927(d)(1). Issues reserved to the Commissioner include opinions that the claimant is "disabled" or "unable to work". 20 C.F.R. § 404.1527(d). Thus, to the extent that the Food Stamp Request for Medical Information form can be construed as Dr. Cyrus' opinion that Sanders is disabled and unable to work, that opinion is not a "medical opinion" and is not entitled to any special weight.

More importantly, however, there are circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where

7

the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

On December 12, 2014, Dr. Cyrus completed a request for medical information work requirements form from the Alabama Department of Human Resources Food Stamp program. (R. 428). On that form, Dr. Cyrus circled "NO" when asked if "the client is mentally and physically able to work." He circled "YES" when asked if this condition is permanent. (*Id*.) Dr. Cyrus indicated that Sanders' conditions were back pain and COPD. This is the extent of the information provided on the form.

This is what the ALJ said about Dr. Cyrus' treatment of Sanders at Medical Outreach Ministries. (R. 62-64).

> Medical Outreach Ministries provided additional treatment records beginning May 28, 2014. [Sanders] exhibited bilateral expiratory wheezes in upper lung fields and diagnoses included asthma/chronic obstructive pulmonary disease, chronic venous stasis (for which compressive stockings were prescribed), and

8

> likely sleep apnea. On June 4, 2014, he was prescribed Wellbutrin for smoking cessation. On July 7, 2014, he had no wheezes and had decreased smoking to one pack per day (Exhibit 11F, P. 23, 17, 13). In follow up in October and November 2014, his lungs were clear. Dr. Richard J. Cyrus, Medical Outreach Ministries, completed a Request for Food Stamps on December 18, 2014. He reported the claimant unable to work due to back pain and chronic obstructive pulmonary disease, with onset five years earlier, and believed to be a permanent condition. On January 5, 2015, the claimant exhibited no respiratory distress on physical exam, no wheezes or rhonchi, and good breath sounds, but was reportedly still smoking some. (Exhibit 14F, P. 3).
>
> The claimant's records support a severe impairment of chronic obstructive pulmonary disease and with continued tobacco abuse. However, when the claimant is compliant with treatment, his wheezing stops and he exhibits good breath sounds. He is currently compliant with medication, and has decreased his smoking habit but continues to smoke, and improvement is recorded. While his chronic obstructive pulmonary disease is a severe impairment, it is not found to be incapacitating to him but has been given due consideration in his residual functional capacity with limitations including restriction from concentrated or excessive exposure to pulmonary irritants, . . .

(R. 63-64).

As noted by the ALJ and confirmed by Dr. Cyrus' treatment notes, the record contains evidence that Sanders's COPD improved with treatment and when he reduced his smoking. (R. 391-414). For example, on May 28, 2014, Sanders prescribed Advair, Symbicort and Albuterol for his COPD. (R. 413). On July 7, 2014, Sanders reported smoking "a little less," and his lungs were clear with no wheezing. (R. 403). On August 6, 2014, Dr. Cyrus noted that Sanders' lungs were clear and there was no wheezing or rhonchi. (R. 395).

Dr. Cyrus saw Sanders five times over six months prior to completing the "Request for Medical Information" form. The form itself is not a medical opinion directed at whether

9

Sanders is disabled. In addition, nowhere in Dr. Cyrus' treatment notes does he indicate that Sanders is disabled. Finally, Dr. Cyrus treated Sanders' COPD conservatively with medication. Consequently, Dr. Cyrus' own treatment notes do not support the level of disability he attributes to Sanders on the form seeking food stamps eligibility.

The ALJ examined and evaluated the treatment records for evidence supporting Dr. Cyrus' assessment of Sanders' ability to work, and he considered Sanders' own testimony. Only then did the ALJ determine that Sanders was not disabled, notwithstanding how Dr. Cyrus completed the Request for Medical Information form. The ALJ's discussion of Sanders' medical records shows that the ALJ gave no weight to the form. The ALJ was not required to explicitly state that he gave it no weight. Accordingly, the ALJ applied the correct legal standard by independently assessing Sanders's ability to work and substantial evidence supports the ALJ's conclusions. 20 C.F.R. §§ 416.927(d)(1); 404.1527(d).

**C. The ALJ Did Not Err By Assigning No Weight to Portions of the Opinion of the Consultative Examiner.**

On March 24, 2015, Dr. Larry Epperson performed a consultative examination which included electromyogram testing ("EMG"). (R. 459-467). Results of the EMG testing were normal and demonstrated "no electrophysiological evidence of bilateral carpal tunnel syndrome, a bilateral ulnar neuropathy, bilateral tardy ulnar palsy, C 5-8 radiculopathy or a diffuse sensorimotor peripheral neuropathy in the left or right upper extremities." (R. 459). The ALJ examined in detail Dr. Epperson's consultative report but gave his residual

10

functional capacity assessment "no weight" because

> it can only be based upon subjective complaints, as the objective testing he did doe not support the hand limitations assessed. There is no report by this source to otherwise support such a limiting assessment. In addition, other records and even the claimant's testimony and written submissions support greater abilities than those assessed by Dr. Epperson.

(R. 65).

Sanders argues that the ALJ erred as a matter of law because "there is no indication in Dr. Epperson's assessment that he relied on subjective complaints." (Doc. # 11 at 6). Substantial evidence supports the ALJ's discounting of Dr. Epperson's assessments of Sanders' physical capabilities. Dr. Epperson's conclusory opinion is not substantiated by any notes in his consultative examination except he notes that all of the test results were normal. Even if the ALJ's conclusion that Dr. Epperson's opinion was based on subjective complaints was wrong, it doesn't matter. Dr. Epperson's opinion is not supported by the objective testing. The ALJ was not required to accept Dr. Epperson's opinion about Sanders' physical abilities in forming Sanders' RFC. The ALJ evaluated the evidence before him which led him to conclude that Sanders could perform light work with limitations.

While the ALJ has the responsibility to make a determination of Sanders' RFC, it is Sanders who bears the burden of proving his RFC, *i.e.*, he must establish through evidence that his impairments result in functional limitations and that he is "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must

provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"). *See also Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations). The ALJ had before him sufficient medical evidence from which he could make a reasoned determination of Sanders' residual functional capacity. Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This Sanders has failed to do. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected the opinions of Dr. Cyrus and Dr. Epperson regarding Sanders' limitations and his ability to perform work.

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.

A separate order will be entered affirming the Commissioner's decision.

Done this 1st day of February, 2018.

                                        /s/Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE